Yvonne MARTINEZ, Plaintiff,

v.

ALBUQUERQUE COLLECTION
SERVICES, INC.,
Defendant.

Civ. No. 93–1468 JB.

United States District Court,
D. New Mexico.

Oct. 14, 1994.

Richard J. Rubin, Santa Fe, NM, for plaintiff Yvonne Martinez.

James M. Curry, IV, Albuquerque, NM, for defendant Albuquerque Collection Services, Inc.

*MEMORANDUM OPINION AND ORDER*

BURCIAGA, Chief Judge.

THIS MATTER came on for a hearing on September 30, 1994, on Plaintiff Yvonne Martinez's August 5, 1994 motion for partial summary judgment and Defendant Albuquerque Collection Services, Inc.'s September 9, 1994 cross motion for partial summary judgment. The Court, having heard the arguments of counsel and having reviewed the pleadings, the submissions of the parties, and the relevant law, and being otherwise fully advised of the premises, finds Plaintiff's motion for partial summary judgment is well taken in part and is granted in part. The Court also hereby grants in part and denies in part Defendant's cross motion for partial summary judgment.

*FACTS*

Unless otherwise stated, the facts recited herein are undisputed. Plaintiff Yvonne Martinez has at all times relevant resided in Santa Fe, New Mexico. Defendant collection agency is Albuquerque Collection Services, Inc. ("ACS"). Creditors hire ACS to collect payment on their outstanding debtor accounts. In exchange for ACS's successful collection efforts, creditors pay ACS a commission, calculated variously at rates ranging from twenty-eight to fifty percent of the balance collected. ACS engages in four types of collection activities. Throughout the collection process, ACS mails to debtors requests for payment printed on ACS stationery. Next, ACS collectors request payment from debtors by telephone. Then, in some cases, ACS prints form letters on the letterhead of an attorney, Michael Croom. These letters, which Croom signs, demand payment and instruct the debtor to call ACS. Finally, ACS initiates collection lawsuits in the New Mexico Metropolitan and District Courts. Prior to litigation, creditors assign their claims to ACS. In these lawsuits, ACS is named as Plaintiff and Croom is ACS's attorney of record.

Three creditors referred their contractual rights against Plaintiff to ACS. All of the debts in question arose out of medical services these creditors provided to Plaintiff in Santa Fe, New Mexico pursuant to oral contracts. In January 1990, Savino Professional Associates ("Savino") referred to ACS an outstanding balance of $55.00, which Plaintiff incurred in May 1989. (DeVine Dep. Ex. 1.) In April 1991, SED Medical Labs ("SED") referred to ACS an outstanding balance of $25.41, which Plaintiff incurred in November 1990. (*Id.*) This balance consisted of a $24.00 charge for diagnostic services, a $1.41 charge for gross receipts tax, and no charge for interest. (Croom Dep. Ex. IIb.) In July 1992, Lovelace Health Systems ("Lovelace") referred to ACS an outstanding balance of $1086.74, which Plaintiff incurred for medical services related to endometriosis surgery performed on four days in September, 1991. (DeVine Dep. Ex. 1; Lovelace Dep. Ex. 3.) The Lovelace balance consisted of assessments for interest and gross receipts tax as well as charges for medical services. (Allen Dep. at 27–30, 60.) Plaintiff disputes the Lovelace debt because of the alleged inferior quality of surgical services Lovelace provided. She underwent identical surgery under the care of another health care provider shortly after Lovelace performed the services underlying the Lovelace debt.

Defendant's efforts at collecting Plaintiff's debts are at the center of this controversy. First, Plaintiff asserts that she never received any mail notices or billings from ACS. (Martinez Dep. at 32–36.) However, Defendant's supervisory employee, Henry DeVine, testified that ACS mailed a "friendly reminder notice" to Plaintiff on February 2, 1993. (DeVine Dep. at 60–61.) Second, the parties agree that an ACS collector, Kirsten Eaton, telephoned Martinez at her place of employment on May 20, 1993. However, the parties dispute whether Ms. Eaton requested payment on all three accounts (Eaton Dep. at 17) or on just the Lovelace account (Martinez Dep. at 13–15, 32–34). Third, on March 3, 1993 ACS mailed to Plaintiff a form letter which Croom signed. (DeVine Dep. at 77.)[1]

---

1. ACS asserts with some force in its Opposition and Cross Motion that in Plaintiff's Deposition she acknowledged that she never received any billing notices from ACS. However, attached to her Reply and Response is Plaintiff's Affidavit reiterating that she never received a billing *from*

Plaintiff remembers receiving a letter on attorney Croom's letterhead. (Martinez Aff. ¶ 2.) Because the parties have not provided the Court with the actual letter, a factual dispute remains as to which debt payments the letter demanded from Plaintiff. Finally, on July 21, 1993, ACS filed a collection lawsuit against Plaintiff. Attorney Croom, acting on behalf of ACS, filed suit in Bernalillo County, pleading contractual rights on the SED and Lovelace accounts but not on the Savino account. (Pl.'s Jan. 13, 1994 Mem. in Supp. of Mot. to Dismiss Countercl. Ex. A.) In order to facilitate the filing of the lawsuit, ACS submitted to Croom a cover sheet which describes the Lovelace and SED accounts as "open." (DeVine Dep. Ex. 11.)

The state trial court awarded Defendant a default judgment in the collection lawsuit. As part of that judgment, Defendant sought and was awarded gross receipts tax, interest, and attorney fees. ACS served Plaintiff's employer with a writ of garnishment. In response, Plaintiff's prior attorney filed a motion to dismiss the suit for improper venue selection. Before the motion could be heard, ACS quashed the writ of garnishment and dismissed the entire collection lawsuit.

Plaintiff filed two lawsuits—one naming Croom as Defendant, and the present case naming ACS as Defendant. In May 1994, Plaintiff executed a general release of liability in favor of Croom. (Pl.'s Sept. 20, 1994 Resp. & Reply Mem. Ex. A.) The present lawsuit, filed on December 14, 1993, challenges ten separate debt collection practices of Defendant under state and federal law.

### ANALYSIS

Because analysis of Plaintiff's allegations under the New Mexico Unfair Trade Practices Act is not necessary to resolve the issues herein, the Court only assesses Plaintiff's claims under the federal Fair Debt Collection Practices Act (FDCPA). The parties agree that Plaintiff is a "consumer" and Defendant is a "debt collector" by FDCPA definition.

ACS and further asserting that she clearly remembers receiving a letter on attorney Croom's

### I. ATTORNEY LETTER

Section 1692(e) of the FDCPA prohibits false, deceptive, and misleading collection practices, including "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C.A. § 1692e(3) (West 1982). In evaluating whether a defendant's collection practice is false, deceptive, or misleading under section 1692e of the Act, the Court must assess the impact such conduct would have on "the least sophisticated consumer." *Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456, 1460 (C.D.Cal.1991); *Swanson v. Southern Or. Credit Serv., Inc.,* 869 F.2d 1222, 1227 (9th Cir.1988); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172–75 (11th Cir.1985). Where debt collectors mass produce and mail form letters printed on an attorney's letterhead and cursorily signed by the attorney, courts find section 1692e(3) liability. *Masuda,* 759 F.Supp. at 1460–61; *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2nd Cir.1993); *cf. Anthes v. Transworld Sys., Inc.,* 765 F.Supp. 162, 166–67 (D.Del.1991) (no debt collector violation under section 1692e(3) where attorney mailed letter from his own office after independently reviewing debtor's file to decide whether he should mail letter). By mailing these attorney form letters, debt collectors create a false or deceptive impression to the unsophisticated consumer that the creditor retained an attorney for the collection of the debtor's particular debts. The letter implies that its source is the attorney, not the collection agency.

The facts in this case are indistinguishable from those in cases finding liability. Defendant ACS delivers between twenty and one hundred form letters to attorney Croom for signature on a weekly basis. ACS collectors, not Croom, decide to which debtors they will mail an attorney letter. Croom's typical review of the individual accounts consists of a mere check for conflicts of interest with his own existing clients. Once Croom has signed the letters, ACS mails them to debtors. ACS pays Croom one dollar per letter for this service. In light of these facts, ACS

letterhead.

clearly violated section 1692e(3) when it mailed to Plaintiff one of its "attorney letters."

ACS's contention that Plaintiff lacks standing is without merit. Defendant correctly notes that Plaintiff testified that she never received any mailings from ACS. However, the essence of liability under section 1692e(3) is that unsophisticated consumers are likely to be misled into thinking that an attorney, rather than a debt collector, sent the letter. Plaintiff has offered uncontroverted evidence that ACS did mail an attorney letter to Plaintiff. (DeVine Dep. at 77.) Furthermore, Plaintiff testifies that she remembers receiving a letter on attorney Croom's letterhead. (Martinez Sept. 14, 1994 Aff. ¶ 2.) Also to no avail is Defendant's argument that it is not vicariously liable for Croom's conduct. The representations under scrutiny here are those of ACS, not Croom. Thus, ACS's liability arising out of the attorney letter is direct rather than vicarious.

■ Defendant further avers that Plaintiff cannot relitigate this issue because she has already settled her claim based on these facts in a separate suit against Croom. This argument, too, fails. Neither claim preclusion nor issue preclusion is applicable unless the court in a former adjudication rendered a final, valid judgment on the merits. Restatement (Second) of Judgments § 17 (1982). Although Croom signed a general release in the prior suit, Defendant has offered no evidence of a judgment on the merits. (Pl.'s Sept. 20, 1994 Reply & Resp. Mem. Ex. A.) Assuming arguendo that the Croom suit resulted in a judgment of dismissal sufficient to constitute a final, valid judgment on the merits, the preclusion doctrines still do not apply. Claim preclusion prevents relitigation of the same claim between the same parties. *Id.* § 24; *State v. Cotton Belt Ins. Co.*, 97 N.M. 152, 153–54; 637 P.2d 834, 835–36 (1981). Defendant ACS was not a party in the prior action. Although issue preclusion is in some circumstances available to one not a party in the prior action, it only arises where the issue to be established was actually litigated and essential to the prior judgment. Restatement (Second) of Judgments § 27 (1982). ACS has not demonstrated that any

issues in this suit were actually decided by the court in the Croom action. A release is in the nature of a contract. *Ratzlaff v. Seven Bar Flying Serv., Inc.*, 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.1982). Its terms are those to which the parties voluntarily agreed. Thus, neither the court nor a jury decided any issues of liability in the Croom suit.

■ Similarly, Croom's general release does not extinguish the liability of the joint tortfeasor, ACS. A release of liability executed in favor of one defendant does not operate to extinguish liability of joint tortfeasors unless the release so provides. Rather, the release only operates to reduce the amount of damages for which the remaining defendants are responsible. N.M.Stat.Ann. § 41–3–4 (Michie 1989). The Croom release provides by its terms that "[i]t is further understood and agreed that this General Release does not release, inure to the benefit of or otherwise affect Albuquerque Collection Service, Inc. or the claims of the undersigned now pending in cause number CIV 93–1468 JB/WWD entitled Martinez v. Albuquerque Collection Service, Inc." (Pl.'s Sept. 20, 1994 Reply & Resp. Mem. Ex. A.) Although Plaintiff's claim against ACS may well be reduced by the amount of consideration Croom paid Plaintiff, Plaintiff's claim against ACS is not extinguished.

Because Plaintiff has offered uncontroverted evidence demonstrating a violation of section 1692e(3), the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

## II. FILING OF SUIT IN BERNALILLO COUNTY

■ Debt collection lawsuits shall be brought "only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C.A. § 1692i (West 1982). This FDCPA venue provision preempts state law venue provisions. *Zartman v. Shapiro & Meinhold*, 811 P.2d 409, 413 (Colo.App.1990). When collection suits are filed in state court, "judicial district or similar legal entity" refers to judi-

**1502**

cial subdivisions of a state court system, not to federal district court subdivisions. *Dutton v. Wolhar*, 809 F.Supp. 1130, 1139 (D.Del. 1992); *Action Prof. Servs. v. Kiggins*, 458 N.W.2d 365, 367 (S.D.1990).

■ All of the debts upon which ACS sought collection from Plaintiff arose by virtue of oral contracts. At commencement of the suit, she resided in Santa Fe County. The Federal Trade Commission opines that where the debtor's obligation is pursuant to an oral contract, the only proper forum in debt collection suits is the place of Plaintiff's residence at the commencement of the suit. Federal Trade Commission, Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50100 (1988) (stating the "obvious fact" that an oral contract is not signed, and thus the only forum available is where the consumer resides). Where a statute is silent on an issue, courts defer to a reasonable administrative interpretation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Because section 1692i is silent as to the proper venue in oral contract cases, the Court will adopt the FTC's reasonable interpretation.

In the present case, the proper forum for a collection suit against Plaintiff would have been where she resided, Santa Fe County. Defendant filed suit in Bernalillo County. Filing suit in the wrong venue forms the basis of civil liability. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1511 (9th Cir. 1994); *Scott v. Jones*, 964 F.2d 314, 318 (4th Cir.1992); *Dutton v. Wolhar*, 809 F.Supp. 1130, 1140 (D.Del.1992). Accordingly, Defendant ACS is liable under the FDCPA's venue provision.

■ ACS unsuccessfully argues that it is not vicariously liable for the venue selection error of its attorney, Croom. Debt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct. 17 Am.Jur.2d *Consumer Protection* § 200 (1990) (debt collector liable for its attorney's conduct because otherwise collector could evade the FDCPA by hiring

attorney to do what it could not do); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994) (after repeal of attorney exemption, debt collector still liable under the FDCPA for its attorney's conduct; otherwise the venue provision superfluous for the first nine years of its operation); *Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480, 1486 (M.D.Ala.1987) (while attorney exemption intact, debt collector liable under the FDCPA for its attorney's violations); *West v. Costen*, 558 F.Supp. 564, 573 (W.D.Vir.1983) (creditor corporation liable under the FDCPA for the acts of its independent collection agents). Defendant has offered no case that rejects these principles of vicarious liability where the attorney is acting under the debt collector's control.

■ Defendant next avers that the bona fide error provision of the FDCPA excuses it from FDCPA violations that were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C.A. § 1692k(c) (West 1982). The bona fide error defense of section 1692k(c) is an affirmative defense which must be pled and proven. *Fox*, 15 F.3d at 1514. Although Defendant has pled the defense, it cannot possibly prevail at trial on this issue. Defendant theorizes that Croom was operating under the mistaken belief that in oral contract cases, section 1692i permits the debt collector to bring suit in the county in which the creditor rendered the services. Courts have consistently held that neither a misunderstanding of the law nor reliance on an attorney's inaccurate advice is sufficient to make out a successful bona fide error defense under the FDCPA. *Pipiles v. Credit Bureau of Lackport, Inc.*, 886 F.2d 22, 27 (2nd Cir.1989); *Hulshizer v. Global Credit Serv., Inc.*, 728 F.2d 1037, 1038 (8th Cir.1984) (per curiam); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982); *Rutyna v. Collection Accounts Terminals, Inc.*, 478 F.Supp. 980, 982 (N.D.Ill.1979). The purpose of the bona fide error defense is to protect collectors in cases of inadvertent "clerical errors," *Baker*, 677 F.2d at 779 (quoting *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir.1974) and explaining that the

FDCPA bona fide error defense is virtually identical to the bona fide error defense under the Truth in Lending Act, 15 U.S.C.A. § 1640(c)). Its purpose is not to shield collectors from liability for systemic errors or abuses. Because Defendant routinely applied the wrong standard in determining where to file suit, it could not have maintained procedures reasonably adapted to avoid the venue violation which occurred in the present case. Thus, Defendant's bona fide error defense conclusively fails.

Because Defendant violated section 1692i, the venue provision of the FDCPA, and because Defendant is not excused under the bona fide error defense, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

## III. UNAUTHORIZED PRACTICE OF LAW

■ Under New Mexico law, a collection agency that brings lawsuits against debtors pursuant to claims the underlying creditor has nominally assigned to it engages in the unauthorized practice of law on behalf of the creditor. *Norvell v. Credit Bureau of Albuquerque,* 85 N.M. 521, 514 P.2d 40 (1973). In *Kolker v. Duke City Collection Agency,* 750 F.Supp. 468, 469 (D.N.M.1990), the court ruled that in light of *Norvell,* section 1692e(5) of the FDCPA prohibits a collection agency from filing suit in New Mexico courts on nominally assigned claims.[2] No relevant facts distinguish the present case from the facts in *Norvell* or *Kolker.* Here, as in those cases, Defendant operates a collection agency that litigates debtor accounts in exchange for a commission creditors pay. The fact that a licensed attorney represents ACS does not immunize ACS from the *Norvell* prohibition. Indeed, *Norvell* explained that "any attorney retained to perform such services in the enforcement of such claims would be Defendant's employee or agent." *Norvell,* 85 N.M. at 527, 514 P.2d at 46 (quoting *Nelson v. Smith,* 107 Utah 382, 154 P.2d 634, 641 (1944)).

■ Defendant contends that *Kolker* was wrongly decided insofar as it ruled that a recently enacted New Mexico statute did not reverse *Norvell.* The statute Defendant refers to states "[n]othing in the Collection Agency Regulatory Act shall be construed to prevent collection agencies from taking assignments of claims in their own names as real parties in interest for the purpose of billing and collection and bringing suit in their own names thereon" so long as "the collection agency appears by a duly authorized and licensed attorney-at-law." N.M.Stat.Ann. § 61–18A–26 (Michie 1993 & Supp.1994). In *Kolker,* Judge Mechem ruled that the above-quoted statute cannot, as a matter of New Mexico constitutional law, affect the holding of *Norvell* because "the regulation of the practice of law is the exclusive constitutional prerogative of [the New Mexico Supreme Court]." *Kolker,* 750 F.Supp. at 472. The notion expressed in *Kolker* that issues relating to the authorized practice of law lie within the domain of the state supreme court is not novel. New Mexico courts have expressly recognized this principle for more than thirty-five years. *Norvell,* 85 N.M. at 525, 514 P.2d at 44; *Application of Sedillo,* 66 N.M. 267, 268, 347 P.2d 162, 162 (1959). Thus, Judge Mechem's decision in *Kolker* was a well-reasoned determination of New Mexico law: section 61–18A–26 cannot authorize collection agencies to "practice law" by bringing suits on nominally assigned claims in New Mexico District, Metropolitan or Magistrate Courts.

■ Defendant next argues that two 1992 amendments to the New Mexico Rules of Civil Procedure have overruled *Norvell* and *Kolker.* Amendment D to Rule 2–107, as promulgated by the New Mexico Supreme Court, pertains to civil procedures in the New Mexico Magistrate Courts. It provides that "[c]ollection agencies may take assignments of claims in their own names as real parties in interest for the purpose of billing and collection and bringing suit in their own names thereon" so long as "the collection agency appears by a licensed attorney-at-

---

**2.** Section 1692e(5) prohibits "[t]he threat to take any legal action that cannot legally be taken."

15 U.S.C.A. § 1692e(5) (West 1982).

law." N.M.Sup.Ct.R.Ann. 2–107 (Michie 1994). Amendment D to Rule 3–107 relates to analogous civil procedures in the New Mexico Metropolitan Courts and is identical to the amendment just quoted. N.M.Sup.Ct. R.Ann. 3–107 (Michie 1993). Defendant maintains that these amendments demonstrate the New Mexico Supreme Court's intent to overrule *Norvell* as it applies to the New Mexico District Courts. Following Defendant's reasoning, collection agencies are no longer prohibited from bringing collection litigation on nominally assigned claims in any New Mexico state court.

This proposition is not credible. Presumably, the New Mexico Supreme Court knows how to express its intentions. If it had intended to extend the provisions of Rules 2–107(D) and 3–107(D) to district courts as well as magistrate and metropolitan courts, it could have done so. If anything, these amendments and the absence of any analogous amendment applicable to district courts demonstrate an implied intent to retain the *Norvell* prohibition as it applies to New Mexico District Courts. Perhaps the New Mexico Supreme Court's rationale for treating magistrate and metropolitan courts differently than district courts stems from the limited jurisdiction of the former courts. However, because the language is clear, this Court need not speculate as to the supreme court's intent.

 Defendant next urges this Court to employ the New Mexico certification procedure to determine whether *Norvell* and *Kolker* are still good law. State certification procedures are merely procedures facilitating abstention. While the existence of such procedures ensure smooth implementation where abstention is employed, "the availability of certification is not in itself sufficient to render abstention appropriate." *Houston v. Hill*, 482 U.S. 451, 470–471, 107 S.Ct. 2502, 2514, 96 L.Ed.2d 398 (1987). This Court has jurisdiction over the present controversy pursuant to 15 U.S.C.A. § 1692k(d) (West 1982). A federal court may only hear a case where subject matter jurisdiction is present. U.S. Const. art. III. Likewise, once the federal court has jurisdiction "it is equally true, that it must take jurisdiction if it

should." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); *Ex Parte Young*, 209 U.S. 123, 143, 28 S.Ct. 441, 447, 52 L.Ed. 714 (1908). There is no justification for abstention here. Moreover, the New Mexico certification procedure imposes its own prerequisite that there must be "no controlling precedents in decisions of the New Mexico Supreme Court or the New Mexico Court of Appeals." N.M.Stat.Ann. § 34–2–8(B) (Michie 1990 & Supp.1994); N.M.Sup.Ct.R.Ann. 12–607(A) (Michie 1992 & Supp.1994). *Norvell* is controlling precedent governing Plaintiff's claim; it has not been overruled to the extent that it prohibits collection agencies from bringing suit in New Mexico District Court on nominally assigned claims.

Because neither abstention nor certification is appropriate here, the Court will not refrain from deciding the merits of Plaintiff's allegations. Furthermore, because there is no genuine issue of whether Defendant engaged in the unauthorized practice of law in violation of section 1692e(5) of the FDCPA, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

## IV. ATTEMPTS TO COLLECT MONIES NOT LAWFULLY DUE

Section 1692e(2) prohibits "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C.A. § 1692e(2) (West 1982). Similarly, section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f(1) (West 1982). Courts employ these FDCPA provisions where debt collectors attempt to collect monies that cannot legally be collected. *Strange v. Wexler*, 796 F.Supp. 1117 (N.D.Ill.1992) (section 1692e(2) violation where debt collector sought attorney fees not lawfully available); *Kimber v. Fed. Fin. Corp.*, 668 F.Supp. 1480

(M.D.Ala.1987) (violations of sections 1692f and 1692e(2) where debt collector brought suit on a time-barred debt); *West v. Costen,* 558 F.Supp. 564 (W.D.Vir.1983) (violations of sections 1692e(2) and 1692f(1) where debt collector assessed a service charge in the absence of an affirmative authorization for such charge). Plaintiff invokes sections 1692e(2) and 1692f(1) to challenge several of Defendant's collection practices.

## A. GROSS RECEIPTS TAX LEVIED ON BALANCES WHICH ALREADY INCLUDE GROSS RECEIPTS TAX

 In November 1990, SED billed Plaintiff $24.00 for "chlamydia slide" and $1.41 for gross receipts tax. In September 1991, Plaintiff's outstanding balance with Lovelace was $1086.74 and consisted of built-in charges for gross receipts tax as well as medical services. SED and Lovelace referred Plaintiff's unpaid debts, $25.41 and $1086.74 respectively, to ACS for collection. When Defendant subsequently obtained a default judgment against Plaintiff on these accounts, it requested and was awarded additional monies for gross receipts tax. Defendant calculated the amount of tax it sought by multiplying the total debt balance times Defendant's collection commission times the applicable gross receipts tax rate.[3] Plaintiff argues that the tax added to the judgment was unlawful double taxation. Defendant counters that section 61–18A–28.1 of the New Mexico statutes expressly permits ACS to impose the additional tax. N.M.Ann.Stat. § 61–18A–28.1 (Michie 1993).

 The question raised is whether New Mexico law mandates that collection agencies levy an additional gross receipts tax on the commission portion of the referred debt where the creditor has already assessed a gross receipts tax on the entire balance. The Court concludes that it does not. In determining the meaning of a statute, the Court looks not only to the particular statutory language but to the design of the statute

as a whole and to its object and policy. *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Generally, courts disfavor double taxation and when faced with an ambiguous statute, presume against a legislative intent to impose double taxation. 84 C.J.S. *Taxation* § 41 (1954 & Supp.1994); 71 Am.Jur.2d *State & Local Taxation* § 32 (1973). Section 61–18A–28.1 permits collection agencies to "collect from the debtor an amount equal to the gross receipts tax ... as [that term is] defined in the Gross Receipts Tax Act." N.M.Ann.Stat. § 61–18A–28.1 (Michie 1993). When read in context with the New Mexico gross receipts taxing scheme, section 61–18A–28.1 does not permit an additional tax assessment on debts which already include tax computed on the entire balance. Rather, it expressly authorizes collection agencies to pass on their tax obligation to the consumer, just as the underlying creditor is impliedly authorized to pass on its tax obligation to the consumer.

In order to discern the amount of gross receipts tax properly added to a debt referred to a collection agency, one must consult the Gross Receipts and Compensating Tax Act. N.M.Stat.Ann. ch. 7, art. 9, §§ 7–9–1 to 7–9–84 (Michie 1993 & Supp.1994). Any person engaging in business in New Mexico is obligated to pay a five percent tax on their gross receipts for the privilege of doing business in New Mexico. N.M.Stat. Ann. § 7–9–4 (Michie 1993).[4] Thus, in the present case, both the creditor and the collection agency are liable for gross receipts tax upon the collection of a consumer's debt. The amount each owes can only be computed by reference to each entity's "gross receipts" resulting from the collection. Gross receipts is a term of art defined in section 7–9–3 of the Tax Act by reference to amounts included and amounts excluded in "gross receipts." Where a seller extends credit in a sales transaction, the seller calculates its gross receipts upon receipt of payment, and in-

---

**3.** The evidence does not demonstrate the amount of tax added to Defendant's judgment. However, Croom testified that he sought and was awarded an additional amount, based on the formula described here. (Croom Dep. 98–100.)

**4.** Counties or municipalities assess an additional obligation on business entities for local option gross receipts tax. *See* N.M.Stat.Ann. § 7–9–3(Q) (Michie 1993 & Supp.1994).

cludes only the sum of money the seller *actually receives.* N.M.Stat.Ann. § 7–9–3(F)(3) (Michie 1993 & Supp.1994). *See also Davis v. Comm'r of Revenue,* 83 N.M. 152, 154, 489 P.2d 660, 661 (Ct.App.1971). Thus, where a creditor must resort to a collection agency, it ultimately receives only a portion of the original sale amount. The creditor's resulting tax liability is also reduced to correspond to the lesser amount the creditor collects. On the other hand, the gross receipts of the collection agency *include* "the total commission ... derived from the business" and *exclude* any "gross receipts tax collected." N.M.Stat.Ann. §§ 7–9–3(F)(1)(b), 7–9–3(F)(2)(b) (Michie 1993 & Supp.1994). These sections clarify that a collection agency does not include the creditor's portion of the proceeds, nor the taxes it collects on behalf of the creditor, in calculating its commission proceeds, i.e., its gross receipts. Rather, a collection agency pays gross receipts tax only on the commission portion of the debt. The total tax imposed on the debt and charged to the debtor is simply the sum of the creditor's tax and the agency's tax. When added together, there is but one tax charged to the consumer on the entire balance.

Because the evidence demonstrates that ACS has charged Plaintiff Martinez an inflated tax not authorized under New Mexico law and in violation of sections 1692e(2) and 1692f(1) of the FDCPA, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

### B. COLLECTION OF A TIME–BARRED ACCOUNT

Plaintiff asserts that ACS undertook collection activities against her on the Savino account, an obligation incurred more than four years before ACS's collection activities. A collection agency's attempts to collect on time-barred accounts violate the FDCPA. *Kimber,* 668 F.Supp. at 1487–89. However, the evidence in the case at bar does not conclusively support Plaintiff's factual allegation. Defendant's collection activities consist of mail notices, telephone calls, attorney letters, and collection lawsuits. Plaintiff testified that she never received any mail notices

from ACS. (Martinez Dep. at 32, 36.) She also testified that when ACS collector Ms. Eaton telephoned her, they discussed only the Lovelace account. (Martinez Dep. at 13, 32.) Because Plaintiff did not produce the attorney letter, it is unclear which debts the letter listed. The collection lawsuit only sought recovery of the SED and Lovelace accounts. (Pl.'s Jan. 13, 1994 Mem. in Supp. of Mot. to Dismiss Countercl. Ex. A.) Because there is a genuine issue whether ACS ever contacted Plaintiff regarding the Savino debt, the Court will deny both Plaintiff's motion for summary judgment and Defendant's cross motion for summary judgment on this count.

### C. INTEREST CHARGES

An obligation to pay interest may arise by contract, by statute, or by way of damages. 45 Am.Jur.2d *Interest and Usury* § 34, at 39 (1969 & Supp.1988). Defendant claims its authority to charge Plaintiff with interest derives from statute:

> Interest rate; no written contract. The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases: A. on money due by contract; B. on money received to the use of another and retained without the owner's consent expressed or implied; and C. on money due upon the settlement of matured accounts from the day the balance is ascertained.

N.M.Stat.Ann. § 56–8–3 (Michie 1986). Plaintiff challenges ACS's interest assessments on the Lovelace and SED debts on several grounds.

### 1. INTEREST ON BALANCES WHICH INCLUDE GROSS RECEIPTS TAX

The debts that Lovelace and SED referred to ACS included gross receipts tax. Plaintiff contends that interest fees are only permissible where the creditor has suffered a lost opportunity on the use of money owed to it as a result of a debtor's failure to timely pay the debt. Because gross receipts taxes are not due until the creditor actually receives the money, Plaintiff concludes that creditors suffer no lost opportunity on the

tax portion of a debt and thus an interest charge on that portion of the debt is not permissible.

The Court disagrees with Plaintiff's view of the law. New Mexico courts have occasionally described a "lost opportunity" rationale when mandating interest awards under section 56–8–3. *Sunwest Bank of Albuquerque v. Colucci,* 117 N.M. 373, 377, 872 P.2d 346, 350 (1994); *Economy Rentals, Inc. v. Garcia,* 112 N.M. 748, 762, 819 P.2d 1306, 1320 (1991). However, that language referring to lost opportunity articulates a rationale for prejudgment interest as a form of damages. It is doubtful that this rationale is intended to limit the express words of the statute, which permit interest in cases where "money [is] due by contract." N.M.Stat.Ann. § 56–8–3(A) (Michie 1986). In construing section 56–8–3, the New Mexico Supreme Court has adopted the view of the Restatement of Contracts § 337 (1932) that prejudgment interest is permissible "as a matter of right when the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices." *Colucci,* 117 N.M. at 378, 872 P.2d at 351; *Kueffer v. Kueffer,* 110 N.M. 10, 12, 791 P.2d 461, 463 (1990); *Bill McCarty Constr. Co. v. Seegee Eng'g Co.,* 106 N.M. 781, 783, 750 P.2d 1107, 1109 (1988); *Grynberg v. Roberts,* 102 N.M. 560, 562, 698 P.2d 430, 432 (1985). *See also* Restatement of Contracts § 337(a). (1932); Restatement (Second) of Contracts § 354(1) (1981).

Furthermore, so long as the amount of money obligation is ascertainable, interest is recoverable even where the creditor has not actually realized any loss as a result of nonpayment. *Grynberg v. Roberts,* 102 N.M. 560, 563, 698 P.2d 430, 433 (1985) (recovery

of interest is not dependent on a showing that the injured party borrowed money or paid interest to cover the breaching party's debt). *See also* Dan B. Dobbs, *Law of Remedies* § 3.6(1), at 248, 250 (2nd ed. 1993) (when plaintiff's underlying loss is ascertainable, plaintiff is entitled to recover interest even if he has not realized any loss due to the delay in receiving payment).

In the present case, Plaintiff was obligated for a sum in exchange for medical services, pursuant to an oral contract. That sum included gross receipts tax, an amount which is ascertainable by mathematical calculation. Because Defendant is authorized by statute to charge interest on definite sums due by contract, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment on this count.

## 2. INTEREST ASSESSED PRIOR TO JUDGMENT AND IN ABSENCE OF AN EXPRESS PROMISE TO PAY INTEREST

 Because Plaintiff did not expressly agree to the prices SED and Lovelace charged her, she portrays their claims as unliquidated or unascertainable. Hence she argues that billing for interest on these debts prior to judgment was unlawful.[5] The Court is not persuaded. The availability of an interest remedy *as of right* is limited by the traditional rule that the underlying obligation must be liquidated to a dollar sum or ascertainable by fixed standards. 45 Am.Jur.2d *Interest & Usury* § 87, at 78 (1969 & Supp. 1988); Dobbs, *supra,* § 3.6(1) at 245, 246; Restatement of Contracts § 337 (1932); Restatement (Second) of Contracts § 354 (1981). Where the obligation is not ascertainable, interest is only available upon a court's determination that justice requires an

---

**5.** Although not necessary to the decision herein, the Court notes that the parties have produced conflicting evidence as to whether any ACS contact prior to the collection litigation consisted of a demand for interest. Although Ms. Eaton testified that her usual practice when telephoning debtors is to request payment for the cumulative balances due (Eaton Dep. at 15–17), she also testified that she did not recall the particular amount she demanded of Plaintiff (*Id.* at 13). Plaintiff testified she never received any written demand for payment from ACS (Martinez Dep.

32–36) and that in the telephone call, Ms. Eaton mentioned only the Lovelace account (Martinez Dep. 13–15, 32–34). Both Henry DeVine and G. Algott testified that ACS did not bill for interest on Lovelace accounts. (DeVine Dep. at 36, no interest billed; G. Algott Dep. at 26, no interest until the debt became "legal".) The sample attorney letter shows a principal amount due to a creditor, absent any interest charges. It further warns that in the event of a lawsuit, any judgment awarded could include "interest as provided by law." (DeVine Dep. Ex. 8.)

award of interest. *Colucci*, 117 N.M. at 378, 872 P.2d at 351. *See also* Restatement of Contracts § 337(b) (1932) (where amount of obligation is not ascertainable, interest is available at the court's discretion); Restatement (Second) of Contracts § 354(2) (1981) (where the underlying obligation is not a promise to pay a definite sum in money, a court may assess interest if justice requires).

 Although the most obvious examples of unascertainable claims are those arising by tort, a contract claim can also be unascertainable. *See, e.g., City of Indianapolis v. Twin Lakes Enters., Inc.,* 568 N.E.2d 1073, 1087 (Ind.App.1991) (where evidence showed a huge disparity in the methods for calculating contractor service rates, the contractual obligation was unascertainable). Under New Mexico law, the mere dispute between the parties as to the amount owed does not render a contract debt unascertainable. *Kueffer,* 110 N.M. at 12, 791 P.2d at 463. Thus, Plaintiff's bald assertion that she disagrees with the amounts Lovelace and SED charged her is not sufficient to demonstrate the debt is unliquidated. Similarly, Plaintiff's potential counterclaim for malpractice against Lovelace is not sufficient to render the original debt claim unliquidated. At most, this allegation, if proven, would justify an ultimate reduction in principal debt and interest calculated thereon. Dobbs, *supra,* § 3.6(1) at 248. In the present case, Plaintiff never asserted this counterclaim in the state court action and thus it remains an unproven allegation.

Plaintiff further argues that the SED and Lovelace obligations are not ascertainable because Plaintiff is obligated, if at all, only under a theory of implied contract or quantum meruit to pay the reasonable value of the services rendered. (Pl.'s Aug. 5, 1994 Mem. in Supp. of Mot. for Partial Summ.J., at 22 n. 10.) Plaintiff misconstrues the distinction between oral contracts, implied contracts, and facts which give rise to a recovery in quantum meruit. *See Taylor v. Allegretto,* 118 N.M. 85, 879 P.2d 86 (1994); *State ex rel. Gary v. Fireman's Fund Indem. Co.,* 67 N.M. 360, 364, 355 P.2d 291, 294 (1960) (noting the distinction between actions in quasi-contract, such as quantum meruit, and ac-

tions in contract). The SED and Lovelace services were rendered pursuant to an oral contract. The creditors were not seeking a remedy in quantum meruit; they were seeking contract remedies. Where terms to an express contract have been omitted, reasonable terms may be implied. Restatement (Second) of Contracts § 204 (1981). Plaintiff has offered no evidence demonstrating that the pricing of medical services generally is incapable of ascertainment. Neither has Plaintiff offered any evidence supporting her allegation that the actual SED or Lovelace charges were unreasonable. Hence, the Lovelace and SED claims were ascertainable in amount.

 Plaintiff next argues that even if the Lovelace and SED debts were ascertainable, section 56–8–3 nonetheless only permits *judicial* assessments of interest. In support of this position, Plaintiff points to language in *Colucci* stating that a court must use discretion and consider countervailing equities in all cases where it awards interest damages under section 56–8–3. *Colucci,* 117 N.M. at 378–79, 872 P.2d at 351–52. The Court is not persuaded by Plaintiff's argument on this point. Section 56–8–3 expressly permits interest on money due by contract. Where a contract or a statute authorizes interest on money debts, the interest is due and payable from the date of refusal of payment. *Smith v. Montoya,* 67 N.M. 413, 422, 356 P.2d 123, 132 (1960); 47 C.J.S. *Interest & Usury* § 30 (1954 & Supp.1994); 45 Am.Jur.2d *Interest & Usury* § 41 (1982). The Court therefore interprets section 56–8–3 to empower private lenders to charge interest on money debts at the legal rate where the contract is silent on the issue. Daniel P. Dabney, *Commercial Law,* 12 N.M.L.Rev. 173, 175 (1982); 47 C.J.S. *Interest & Usury* § 11 (promise to pay interest at the legal rate implied at law); *Economy Rentals,* 112 N.M. at 762, 819 P.2d at 1320 (describing section 56–8–3 as permitting interest on both damage and implied promise theories). Although *Colucci* requires a court to exercise discretion when it awards interest as damages, the Court is not persuaded that *Colucci* reduces section 56–8–3 to a mere judicial tool. Rather, section 56–8–3 prescribes the legal rate of interest in all

cases where it is charged, whether by courts or by private lenders.

Because Plaintiff's SED and Lovelace debts are ascertainable, Defendant was authorized by statute to seek interest at the statutory rate of fifteen percent on these debts. Accordingly, the Court will deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment on this ground.

### 3. COMPOUND INTEREST

■ Plaintiff correctly maintains that ACS assessed interest on the Lovelace debt, a sum which included interest charges. The evidence demonstrates that the interest ACS added to the Lovelace debt did not overlap in time with the interest Lovelace charged. In fact, at least one month passed (February 1992) in which neither Lovelace nor ACS assessed interest on the unpaid debt.[6] Nonetheless, when ACS calculated interest on the Lovelace balance ($1086.74), it did so without first deducting interest already assessed. (Croom Dep. at 98.) This method is an assessment for compound interest. 45 Am.Jur.2d *Interest & Usury* § 76 (1969) (compound interest is interest computed on a principal balance which includes interest). The New Mexico statute permits only simple, not compound interest. *Southern Union Exploration Co. v. Wynn Exploration Co.*, 95 N.M. 594, 601, 624 P.2d 536, 543 (Ct.App. 1981). Because Defendant charged Plaintiff with compound interest, a fee not permitted by law, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

### D. ATTORNEY FEES

Croom, acting on behalf of Defendant in the collection suit, sought and was awarded attorney fees. The statute permitting fees in collection suits provides that "[i]n any civil action in district court, small claims court or magistrate court to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court." N.M.Stat.Ann. § 39–2–2.1 (Michie 1991). Plaintiff attacks Defendant's receipt of an attorney fee award on two grounds.

### 1. SUPPORTING DOCUMENTATION

■ Plaintiff contends that Croom should have provided documentation when he sought attorney fees. In support of her proposition that documentation is mandatory, Plaintiff refers the Court to the statute's phrase "reasonable attorney's fees." She further cites *Gallegos v. Franklin*, 89 N.M. 118, 547 P.2d 1160 (1976). Neither the statute nor the case establishes an affirmative duty on attorneys to submit documentation when requesting attorney fees. Rather, the statute permits the *court* to set fees that are reasonable. The *Gallegos* court found a trial court's default judgment award of damages without the benefit of evidence to be an abuse of its discretion. At best, Plaintiff in the present case has questioned the state trial court's exercise of discretion. The FDCPA was not enacted as a means to collaterally attack a state court judgment, but rather as a means to challenge unfair debt collection practices. 15 U.S.C.A. § 1692(e) (West 1982). Accordingly, the court will deny Plaintiff's motion for summary judgment and grant Defendant cross motion for summary judgment on this ground.

### 2. OPEN ACCOUNTS

■ Defendant categorized Plaintiff's accounts as "open." (DeVine Dep. Ex. 11.) Section 39–2–2.1 only permits the award of attorney fees in "any civil action ... to recover on an *open account*." N.M.Stat.Ann. § 39–2–2.1 (Michie 1991) (emphasis added). An open account "does not mean an amount owed on a single transaction or an account stated. It is a written account concerning a related series of debit and credit entries of reciprocal charges and allowances kept open until it shall suit the convenience of either party to settle and close the account." *Southern Union Exploration Co. v. Wynn*

---

**6.** Lovelace assessed Plaintiff 1% per month finance charges of $1.53, $1.53 and $.18 (Allen Dep. at 27–29). Based on the amounts charged, the Court concludes the Lovelace charges applied for approximately three months, i.e. through January 1992. The interest sought by ACS in the collection lawsuit applied to the periods March 29, 1992 to July 13, 1993 (DeVine Dep. Ex. 11; Pl.'s Jan. 13, 1993 Mem. in Supp. of Mot. to Dismiss Countercl. Ex. A).

*Exploration Co.*, 95 N.M. 594, 624 P.2d 536 (Ct.App.1981). The continuity of an open account is broken where the relationship of the parties changes or where the account has remained dormant. 1 Am.Jur.2d *Accounts & Accounting* § 5 (1962).

The SED charge against Plaintiff was not pursuant to an open account, but rather was a single transaction. Croom acknowledged that according to his judgment, Plaintiff's account with SED was not open. (Croom Dep. at 87.) Neither is the Lovelace account open. Lovelace and Plaintiff never engaged in reciprocal transactions. The transactions all occurred in one month and related to Plaintiff's endometriosis surgery. Shortly after the surgery, Plaintiff ceased accepting medical care from Lovelace and sought out other health care providers to perform the services over again. Plaintiff's account lay dormant for ten months before Lovelace referred it to ACS. Croom acknowledged that a court might find the Lovelace account was not open. (Croom Dep. at 86.)

Because neither the SED nor Lovelace accounts were open, Defendant falsely represented the legal nature of Plaintiff's debt and subsequently received an award of legal fees to which it was not entitled, in violation of section 1692e(2) and 1692f(1). Accordingly, the Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross motion for summary judgment on this ground.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's mailing to Plaintiff a form letter printed on Croom's letterhead and signed by Croom was a false and misleading representation in violation of section 1692e(3) be, and hereby is granted. Defendant's motion for summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's filing of a collection lawsuit against Plaintiff in Bernalillo County was in violation of the venue provision of the FDCPA, section 1692i, be, and

hereby is granted. Defendant's cross motion for summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's bringing of a collection lawsuit against Plaintiff pursuant to the creditors' assignments of Plaintiff's debts constituted the unauthorized practice of law in violation of section 1692e(5) be, and hereby is granted. Defendant's cross motion for summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's levy of gross receipts tax on debts already including such tax was a false representation of the legal nature of a debt, in violation of section 1692e(2), and was also an attempted collection of an amount not permitted by law, in violation of section 1692f(1) be, and hereby is granted. Defendant's cross motion for summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant attempted to collect on a time barred account in violation of sections 1692e(2) and 1692f(1) be, and hereby is denied. Defendant's cross motion for partial summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's assessment of interest on debts which included gross receipts tax was in violation of sections 1692e(2) and 1692f(1) be, and hereby is denied. Defendant's cross motion for partial summary judgment on the same ground is hereby granted.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's alleged attempt to collect interest prior to judicial determination in and in the absence of a contract provision permitting interest was in violation of sections 1692e(2) and 1692f(1) be, and hereby is denied. Defendant's cross mo-

tion for partial summary judgment on the same ground is hereby granted.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's levy of interest on debts already including interest was an impermissible assessment of compound interest, and thus was a false representation of the legal status of a debt in violation of section 1692e(2), and was also the attempted collection of an amount not permitted by law, in violation of section 1692f(1) be, and hereby is granted. Defendant's cross motion for summary judgment on the same ground is hereby denied.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's request for attorney fees without submitting documentation in support thereof was in violation of sections 1692e(2) and 1692f(1) be, and hereby is denied. Defendant's cross motion for partial summary judgment on the same grounds is hereby granted.

**IT IS FURTHER ORDERED** that Plaintiff's motion for partial summary judgment on the ground that Defendant's attempt to recover attorney fees by representing Plaintiff's accounts as "open" was a false representation of the character of a debt in violation of section 1692e(2), and was also the attempted collection of an amount not permitted by law, in violation of section 1692f(1) be, and hereby is granted. Defendant's cross motion for summary judgment on the same ground is hereby denied.