Douglas MUNOZ, Plaintiff,

v.

PIPESTONE FINANCIAL, LLC
and Messerli & Kramer,
P.A., Defendants.

No. CIV. 04–4142JNESRN.

United States District Court,
D. Minnesota.

Sept. 12, 2005.

Wood R. Foster, Jr., Esq. and Mark Thieroff, Esq., Siegel Brill Greupner Duffy & Foster, Minneapolis, MN, appeared for Plaintiff Douglas Munoz.

Michael A. Klutho, Esq., Bassford Remele, P.A., Minneapolis, MN, appeared for Defendants Pipestone Financial, LLC and Messerli & Kramer, P.A.

## MEMORANDUM

ERICKSEN, District Judge.

Douglas Munoz brought this action against Defendants Pipestone Financial, LLC and Messerli & Kramer, P.A. (collectively Defendants), asserting claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692o (2000). The case is before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the Court denies Defendants' motion.

## I. BACKGROUND

In 1995, Munoz opened a credit-card account (Account) with First USA Bank, N.A. (First USA). The Cardmember Agreement governing the Account established an interest rate of 11.99 percent per year[1] on outstanding purchase balances. The Cardmember Agreement also provided for the payment by Munoz of reasonable attorney fees in the event that First USA referred the account in default to an attorney who is not a "regularly salaried employee" of First USA. Moreover, the Cardmember Agreement provided: "[First USA] may at any time assign [the] Account, any sums due on [the] Account, this Agreement or [First USA's] rights or obligations under this Agreement. The person(s) to whom [First USA] makes any such assignment shall be entitled to all of [First USA's] rights under this Agreement, to the extent assigned."

Munoz used the Account for approximately seven years. He ultimately defaulted and the Account was closed in September 2002. The Account balance was $7,519.13. In the summer of 2003, rights in and to a portfolio of debt, including Munoz's debt with First USA, were assigned to Unifund CCR Partners (Bank One–Unifund Assignment). The transaction was memorialized in a bill of sale, which provided for the assignment of "all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1" to Unifund.[2] On December 29, 2003, Unifund sold to Pipestone "all of its good and marketable title . . . in and to" certain accounts, including Munoz's Account. Pipestone is a purchaser of defaulted debt portfolios.

Pipestone retained Messerli & Kramer to collect Munoz's debt. Messerli & Kramer sent a demand letter in the amount of $8,660.26 to Munoz on January 5, 2004. This letter was sent in an envelope with a transparent window. On April 7, 2004, Messerli & Kramer filed suit on behalf of Pipestone in Minnesota District Court for the First Judicial District. In the state complaint, Pipestone sought the principal sum; attorney fees in the amount of $2,105.35, which represented 28% of the principal; and accrued interest totaling $1,341.20. Munoz filed this action on September 17, 2004. Munoz claims that Defendants violated the FDCPA by attempting to collect an impermissible amount of interest, misrepresenting the attorney fees that may lawfully be received, and by sending a letter in an envelope through which personal and confidential information was visible. Munoz has since stipulated to entry of judgment in the state action for the full principal amount of $7,519.13.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to inter-

---

1. This rate applied after an "introductory period."

2. The purchase agreements are not part of the record.

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. Interest rate and attorney fees

In Count One of his Complaint, Munoz alleges that Defendants attempted to collect interest at an impermissible rate under Minnesota law and the FDCPA. In Count Two of his Complaint, Munoz alleges that Defendants violated the FDCPA by misrepresenting the entitlement to attorney fees in connection with the collection of Munoz's debt. Munoz asserts that Pipestone was not assigned First USA's rights to either collect interest or to collect attorney fees because those rights were not part of the Bank One–Unifund Assignment. Munoz further asserts that Unifund, therefore, could not assign those rights to Pipestone. Alternatively, Munoz argues that even if Pipestone were entitled to collect interest or attorney fees pursuant to the assignment, it is not permitted to collect interest at the rate of ·11.99 percent under Minnesota law or attorney fees based on a percentage of the principal irrespective of the legal services actually provided. Defendants contend that Pipestone is authorized to collect 11.99 percent interest and attorney fees because it is a successor in interest to First USA's rights in the Cardmember Agreement, including both the interest rate and attorney fees provisions.

The Court first considers whether Defendants have demonstrated, as a matter of law, that Pipestone was assigned the rights to collect interest and attorney fees under the Cardmember Agreement. Unifund could only assign to Pipestone the rights it acquired. Therefore, the Court must first determine what rights passed with the Bank One–Unifund Assignment. The bill of sale memorializing that transaction provided that only the "rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1" were assigned. The parties acknowledge that this dispute turns on whether the term "receivables" includes the right to collect interest and attorney fees.

▬ Under Minnesota law, absent an ambiguity, contract terms are given their plain and ordinary meaning. *See Knudsen v. Transp. Leasing/Contract, Inc.,* 672 N.W.2d 221, 223 (Minn.Ct.App.2004). The plain meaning of "receivable" is "[a]n amount owed." *Black's Law Dictionary* 1296 (8th ed.2004).[3] Because the term "re-

---

**3.** The term "account receivable" is defined as "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." *Black's Law Dictionary* 18 (8th ed.2004).

ceivable" refers to an amount owed, it does not refer to interest not yet accrued or future attorney fees. Using the plain meaning of "receivable," the amount owed at the time of the Bank One–Unifund Assignment was the $7,519.13 balance, plus interest accrued up to that time. Thus, Defendants have failed to demonstrate that, as a matter of law, Pipestone was assigned the rights to collect interest and attorney fees. For this reason, Defendants' motion for summary judgment on Counts One and Two is denied.[4]

### B. Envelope window

In Count Three of his Complaint, Munoz alleges that Defendants violated the FDCPA by communicating with consumers using window envelopes through which personal and confidential information was visible. Specifically, Munoz claims that the January 5 letter was transmitted in an envelope with a transparent window that revealed Munoz's name and address, along with the following:

Re: Our client: Pipestone Financial, LLC as successor in i...

Total amount due: $8,660.26

Defendants contend that letters prepared by Messerli & Kramer are placed in envelopes so that only the address appears through the envelope window. To this effect, Defendants have submitted evidence of procedures taken by Messerli & Kramer that purportedly ensure that the letters are prepared correctly. For example, Messerli & Kramer asserts that it specifically trains its mail-processing staff to prepare letters properly. Defendants contend that these procedures demonstrate a good faith effort to comply with the FDCPA and that any mistake in folding Munoz's letter in a manner that permitted the amount of the debt to be visible was the result of a "bona fide error."

The following is a violation of the FDCPA:

Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8). The FDCPA further provides that a debt collector "may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." 15 U.S.C. § 1692k(c). The purpose of the bona-fide-error defense is to protect debt collectors from inadvertent clerical errors. *Danielson v. Hicks*, Civ. No. 3–94–1053, 1995 WL 767290, at *2 (D.Minn. Oct. 26, 1995); *Martinez v. Albuquerque Collection Servs.*, 867 F.Supp. 1495, 1502 (D.N.M.1994). "[T]he fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses under the Act." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1239 (5th Cir.1997).

The record reveals that Messerli & Kramer folds all single-page collection letters, like the January 5 letter to Munoz, with a folding machine. These letters are then placed manually into window envelopes. There is also evidence that Messerli & Kramer staff visually check these machine-folded letters to make sure they are correctly placed with the address showing in the window. However, Munoz has submitted evidence that disparities in the

---

4. The Court does not reach Munoz's alternative arguments that Pipestone is not entitled to collect interest at the rate of 11.99 percent under state law or attorney fees based on a percentage of the principal.

sizes of the folded letters and the window envelopes used by Messerli & Kramer allow the letters to shift, thereby revealing information that might indicate that the letter pertains to debt collection. Thus, a reasonable fact finder could conclude that the transmittal of the January 5 letter with impermissible information visible was not a bona fide error and, even if it was, that Messerli & Kramer's procedures were not reasonably adapted to avoid such error. Accordingly, Defendants' motion is denied insofar as it relates to Count Three of Munoz's Complaint.

## C. Liability of Pipestone

The FDCPA regulates the practices of "debt collectors." Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA lists exceptions to this general definition. *See id.* § 1692(a)(6)(A)-(F).

Defendants argue that Pipestone is not a "debt collector" under the FDCPA. Defendants do not contend that Pipestone falls into one of the statutory exceptions, but instead argue that it is not a "debt collector" because it never directly communicated with Munoz. Munoz, on the other hand, contends that Pipestone is a "debt collector" under the FDCPA because it purchased Munoz's debt after he defaulted to collect on the debt.

Courts have held that entities that purchase defaulted debt for collection are debt collectors under the FDCPA. *See, e.g., Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir.2003). Here, it is undisputed that Pipestone is a purchaser of defaulted debt portfolios. It is also undisputed that Pipestone and Messerli &

Kramer entered into a Collection Agreement, whereby they agreed that Pipestone "may from time to time in its sole discretion refer to [Messerli & Kramer] delinquent accounts to be collected by [Messerli & Kramer] on behalf of [Pipestone]." They further agreed that Messerli & Kramer would be paid "a contingency fee in the amount of 28%." It is clear from this agreement that Pipestone maintained ownership over the debt and that it would receive any monies collected, less Messerli & Kramer's fees.

Neither party has directed the Court to controlling authority reaching the issue of whether an entity that is in the business of collection of debts and that does not itself communicate with a debtor from whom it is attempting to collect a debt can be liable for a violation of the FDCPA. With the broad statutory definition of "debt collector" in mind, the Court turns to the record, which demonstrates that the principal purpose of Pipestone's business is to purchase and collect debts and that Pipestone uses instrumentalities of interstate commerce or the mails in that business. Therefore, the Court finds that Pipestone is a debt collector under the FDCPA and can be held liable for its attempts to collect on Munoz's debt.

## III. CONCLUSION

For the reasons stated above, the Court denies Defendants' motion for summary judgment. The Court will issue an Order consistent with this Memorandum separately.