Louis KOLKER, Plaintiff,

v.

DUKE CITY COLLECTION AGENCY, Duke City Collectors, Elmer D. Chavez, and E.P. Clinton, Inc., a New Mexico corporation, Defendants.

No. 90–0041–M Civil.

United States District Court, D. New Mexico.

Oct. 17, 1990.

---

Richard J. Rubin, Santa Fe, N.M., for plaintiff.

Keleher & McLeod, John M. Kulikowski, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on plaintiff's motion for partial summary judgment regarding the unauthorized practice of law. Having considered the motion and response and being otherwise fully advised in the premises, I find that the motion is well taken and it will be granted.

## BACKGROUND

Plaintiff brought his action alleging a series and pattern of debt collection practices that are prohibited by the Fair Debt Collection Practice Act, 15 U.S.C. § 1692 *et seq.* (the Act). The parties do not dispute that plaintiff is a "consumer" as defined by § 1692a(3) and that defendants are each a "debt collector" as defined by § 1692a(6), which are requirements that subject defendants to the Act.

One collection practice explicitly rendered unlawful by Congress involves the unauthorized practice of law by debt collection agencies. Congress recognized that the question of what constitutes the unauthorized practice of law by debt collectors is a matter of state law unaffected by the enactment of the federal regulatory scheme. The Act states that "[n]othing in this title shall be construed to authorize the bringing of legal actions by debt collectors." 15 U.S.C. § 1692i(b). The Act further states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (5) The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The Staff Commentary to the Act, promulgated by the Federal Trade Commission, 50 F.R. 50097–50010 (Dec. 13, 1988), explains this provision as follows:

> *Illegality of Threatened Act.* A debt collector may not threaten that he will illegally contact an employer, or other third party, or take some other action that cannot legally be taken (such as advising the creditor to sue where such advise would violate state's rules governing the unauthorized practice of law). *If state law forbids a debt collector from suing in his own name* (Or from doing so without first obtaining a formal assignment and that has not been done), *the debt collector may not represent that he will sue in that state.*

Commentary Section 807(5)–7. (Emphasis added).

Plaintiff argues that the defendants' practice of taking the assignment of debts from an underlying creditor on a contingency fee basis and the filing of a suit by the collection agency's own attorneys in the collection agency's own name has been held to constitute the unauthorized practice of law by the New Mexico Supreme Court in *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 85 N.M. 521, 514 P.2d 40 (1973). Plaintiff now moves for a partial summary judgment on the issue of whether defendants' conduct and practice concerning their referral of consumer debts for collection litigation constitutes the unauthorized practice of law in violation of § 1692e(5) of the Act. Defendants' position is that the narrow holding of *Norvell* is not controlling in this case; that even if *Norvell* controls, issues of material fact preclude summary judgment; and that the conduct of defendants is specifically authorized by N.M.Stat.Ann. § 61–18A–26 (1978).

### FACTS

The material facts relevant to the present motion are as follows: The collection efforts undertaken by defendants in this case against Mr. Kolker relate to an alleged debt owed to Lovelace Medical Center for the amount of $814.81. In attempting to collect the purported debt, defendants sent Mr. Kolker three form written communications over a period of approximately two months. The third and final communication, dated December 13, 1989, stated "LAST CHANCE TO PAY THIS BEFORE IT IS SENT TO ATTORNEY DOROTHY SANCHEZ." Mr. Kolker's account was in fact referred to attorney Sanchez, who filed a collection action against him in State District Court on February 21, 1990, naming "Duke City Collectors, a division of E.P. Clinton, Inc." as plaintiff.

At all times relevant, defendants have undertaken to collect debts owed to Lovelace Medical Center pursuant to an Agreement dated June 27, 1983. Accounts are not purchased by the collection agency. Rather, Lovelace assigns accounts to defendants on a contingency basis so that defendants can commence litigation when other legal means of collection have not

been effective. The agreement states that the "[a]gency should not use this assignment until all other legitimate methods of collection have been attempted without success and in the agency's judgment litigation is the only means which might bring about more satisfactory results." If, after the commencement of litigation, the debtor presents what may be a viable defense or files a counterclaim, the agency must consult with Lovelace or Lovelace's attorney. The Agreement provides that for its services the agency will receive 50% of the amount collected on accounts referred to a licensed attorney for litigation. Although there may be minor changes, the Agreement with Lovelace is the same as defendants employ with each of their creditors.

When an account is assigned from a creditor, it is assigned to an individual agency collector. At a point after the collector has exhausted collection efforts, the collector may then refer the account to Mr. Clinton personally, who screens each account to determine whether an attorney referral should be made. If he concludes that the account should be referred, Mr. Clinton obtains an account verification form and a duplicate assignment form for each account from the creditor. Defendants refer approximately 50 Lovelace claims per month to attorney Sanchez and over one hundred per month in total from all creditors. Ms. Sanchez then engages in her own collection process. In the year and one-half that Ms. Sanchez has been representing defendants, she filed approximately 150 collection suits, all naming Duke City as the sole plaintiff. In each suit filed, Duke City is compensated on the same 50% contingency basis that is in effect with Lovelace.

Ms. Sanchez is retained by defendants at a rate of $1,500 per month "to perform all work needed to represent the companys [sic] interest in accounts referred for collection" and "to represent [Duke City] in all legal work having to deal with the accounts receivable of clients." Defendants advance the court costs to Ms. Sanchez prior to the collection litigation being filed.

Ms. Sanchez refers to the underlying creditor as "the client's client." Accordingly, if Ms. Sanchez needs additional information, she contacts Duke City Collectors first. Most of the time Ms. Sanchez relies on Duke City to get the needed information. Sometimes, with Duke City's permission, Ms. Sanchez will contact the underlying creditor (her "client's client") directly. The only other occasion when Ms. Sanchez has direct contact with the underlying creditor is to interview its representative as part of her witness preparation for trial. According to Ms. Sanchez, "decisions as to compromise settlements, dropping a case or pursuing it further are primarily made after consultation with Duke City and on occasion with the originating creditor." All aspects of the collection efforts undertaken by defendants against plaintiff are the typical, routine acts and practices employed by defendants.

## DISCUSSION

■ Defendants argue that issues of material fact preclude summary judgment. Defendants first point out that the validity of the debt is disputed by plaintiff. However, whether a consumer is liable for the underlying debt that a debt collector is attempting to collect is irrelevant and immaterial to whether the debt collector is liable for conduct that violates the Act. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir.1982). The fact that the validity of the underlying debt is disputed is, therefore, not material to the issue presented by the present motion.

Defendants also claim that the alleged facts are characterized in such a way to suggest that defendants do little else by way of collection efforts before referring matters to litigation and that legal pleadings and legal decisions are made by defendant, Mr. Clinton, rather than defendants' attorney, Ms. Sanchez. I do not agree and have not construed the facts as defendants claim. As discussed below, my decision turns on the question of whose interests are really at stake when litigation is initiated and whether that party in reality controls the litigation. Other facts, even if disputed, are not material to the present

motion and therefore, do not preclude summary judgment.

■ Defendants next argue that the New Mexico Supreme Court's decision in *Norvell* is not controlling in the present case. Again, I disagree. Construction of state law by the state's highest court is binding on federal courts. *Eisenstadt v. Baird*, 405 U.S. 438, 442, 92 S.Ct. 1029, 1032–33, 31 L.Ed.2d 349 (1972). In *Norvell*, the New Mexico Supreme Court resolved two distinct issues concerning the unauthorized practice of law by debt collection agencies. First, the court affirmed an injunction against the Credit Bureau of Albuquerque, barring it from engaging in the "preparation of pleadings, orders, [or] judgments or appearing in Magistrate Court on behalf of [creditors] on a recurring or consistent basis irrespective of whether payment or other consideration, direct or indirect, is involved." *Norvell*, *supra* 85 N.M. at 525, 514 P.2d 40. This first portion of the *Norvell* decision does not address the issue presented in the present case and plaintiff is not claiming that defendants violated this rule.

■ The second issue decided in *Norvell* is squarely on point with the question now at issue and is dispositive. The court reversed the trial court's denial of an injunction and found that

> even where court proceedings are initially handled by Credit Bureau attorneys, there is still the element of solicitation and the charging of compensation for legal services by the Credit Bureau. The fact that it elects to use its own attorneys from inception is in itself control of the litigation.... The assignments procured by the Credit Bureau were not in truth taken for the purpose of acquiring title and ownership, but rather to facilitate the furnishing of legal services for consideration.

*Id.* at 530, 514 P.2d 40.

In reaching its decision, the New Mexico Supreme Court relied on the rationale of *Nelson v. Smith*, 107 Utah 382, 154 P.2d 634 (1944); *Bump v. Barnett*, 235 Iowa 308, 16 N.W.2d 579 (1944); and *State v.*

*Bonded Collections, Inc.,* 36 Wis.2d 643, 154 N.W.2d 250 (1967). The New Mexico court relied most heavily on the language and reasoning of the Wisconsin Court. In a fact situation similar to that of the present case, the Wisconsin Court held that

> although the collection agency was the real party in interest within the meaning of the procedural statutes, the assignment conveyed only a naked legal title and the true client whose right of action was at stake remained the creditor. The [Wisconsin] court went on to say:
>
>> "The defendants admit, when they acknowledge the proceed-splitting arrangement, that the creditor retains an interest in the subject matter of the lawsuit. The fact is that it retains the entire interest in the amount due subject to the percentage of the amount collected that the collection agency claims as its costs and fees. It is sheer hypocrisy to conclude that the percentage retained by the collection agency represents its equity or ownership share of the claim. It is its fee or charge for professional services rendered. Under these circumstances, the property right of the creditor is directly affected and his recovery is dependent upon the litigation undertaken. There is no doubt that the client whose interests must be served and represented in the suit for collection under a normal lawyer-client relationship is the creditor.
>
>> Thus we have a situation where the defendants ... advise the creditor when to start a lawsuit. Upon taking a limited assignment, the defendants hire an attorney who, at their direction, commences suit. The direction of lawsuit, defendants admit, is vested in them not in the creditor who is the true client. If the suit is successful, the collection agency pockets a fee for services rendered. We conclude that habitual conduct of this nature for a fee constitutes the practice of law."

*Id.* quoting, *State v. Bonded, supra,* 154 N.W.2d at 255. (Citations omitted.)

As plaintiff correctly points out, two factors form the basis for the holding adopted by the New Mexico Supreme Court. First, the assignments to the collection agency on a contingency basis created a situation where the creditor retained the controlling interest in the right of action but where title was taken by the collection agency to facilitate the furnishing of legal services for a fee. Second, by using its own attorneys, the collection agency controlled the litigation. Both elements are present in the uncontroverted material facts set out in the present case. I, therefore, find that, under *Norvell,* the conduct of defendants at issue here does constitute the unauthorized practice of law.

■ I am not persuaded by defendants' last argument that their conduct is authorized by statute. The statute relied on states that

> Nothing in the Collection Agency Regulatory Act [§§ 61–18A–1 to 61–18A–33 NMSA 1978] shall be construed to prevent collection agencies from taking assignments of claims in their own names as real parties in interest for the purpose of billing and collection and bringing suit in their own names thereon, provided that no suit authorized by this section may be instituted on behalf of a collection agency in any court unless the collection agency appears by a duly authorized and licensed attorney-at-law. In such Suit, the court may, in its discretion, authorize payment of reasonable attorney fees and costs to the prevailing party.

N.M.Stat.Ann. § 61–18A–26 (1978). Defendants' position is that on its face, the statute provides that a collection agency has the right to bring suit in its own name *provided* it uses an attorney as defendants did in the present case.

The New Mexico Supreme Court held in *Norvell* that its decision was one in which the legislature has no authority because "the regulation of the practice of law is the exclusive constitutional prerogative of this court." *Norvell, supra,* 85 N.M. at 528, 514 P.2d 40. Defendants concede that § 61–18A–26 does not overrule the *Norvell* decision. Therefore, as a matter of New

Mexico constitutional law, in passing § 61–18A–26, the legislature could only act in those areas left unaffected by the *Norvell* decision, that is, the prosecution of claims owned by the collection agency. If § 61–18A–26 was construed to authorize prosecution by a collection agency in its own name of its creditor's contingency assignment, the statute would be unconstitutional. I, therefore, find that § 61–18A–26 does not authorize the conduct of defendants at issue here and such conduct does constitute the unauthorized practice of law, which is prohibited by the federal Act. Now, Therefore,

IT IS ORDERED that plaintiff's motion for partial summary judgment shall be, and hereby is, granted.