Cleo H. RUSSEY, Plaintiff,

v.

Jon P. RANKIN and TCA, Inc., d/b/a TCA Collections, Defendants.

Nos. CIV. 92–766 MV/DJS,
CIV 92–776 MV/DJS.

United States District Court,
D. New Mexico.

July 17, 1995.

Richard J. Rubin, Santa Fe, New Mexico, for plaintiff.

Martin E. Threet, Threet & King, Albuquerque, New Mexico, for TCA.

Jon P. Rankin, Tiburon, California, pro se.

## MEMORANDUM OPINION

VAZQUEZ, District Judge.

THIS MATTER came on for consideration of the Plaintiff's Amended Motion for Partial Summary Judgment, filed March 2, 1993. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authority. The Court finds that the motion is well-taken in part and not well-taken in part as further explained below.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c) provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2551–53, 91 L.Ed.2d 265 (1986). Upon such a showing,

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or if otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). Viewing the evidence in the light most favorable to the non-movant, there is no issue for trial unless the Court finds sufficient evidence to support a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## FACTS

The undisputed facts are as follows. Plaintiff received a credit card from Bank One of Columbus, Ohio, and used the card to purchase several personal items qualifying as "consumer debts" under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA"). Defendant TCA, Inc., ("TCA"), a California debt collection agency, was hired by Bank One to collect money owed on its outstanding overdue accounts.

Defendant Jon P. Rankin had a "Retainer Agreement" with Defendant TCA formalized in January 1991. The Agreement contained two addenda entitled "Rules of Engagement" and "Delegation of Authority." Rankin authorized certain TCA personnel to affix a facsimile stamp bearing his signature on form demand letters which he had revised and approved in advance. The agreement further provided Rankin with an office contiguous to that of TCA. Defendant Rankin was physically present for two days each month in this office and was available by telephone all other working days.

While residing in New Mexico, Plaintiff received two letters regarding his outstanding debt to Bank One. The first letter ("AZL1") was dated July 31, 1991, and bore a signature purporting to be that of Defendant Rankin, an attorney licensed in California. The letterhead indicated the correspondence was from the "Law Offices of Jon P. Rankin" and gave a phone number for which TCA was the subscriber. TCA employees answered all phone calls to the listed number.

The AZL1 letter stated in part: "I am the attorney for the above referenced creditor [Bank One]" and instructed the debtor to "please send your check for $1602.70 directly to me within five days." The letter informed Plaintiff Russey that, although he had thirty days in which to dispute the debt, "we have

the legal right to file a lawsuit on the claim within the thirty day period."

The second letter ("NTC1") received by Plaintiff in Albuquerque was dated August 3, 1991, and bore a "TCA Collections" letterhead. The NTC1 collection letter states in part: "YOUR ACCOUNT AND COMPLETE FILE IS NOW IN THIS OFFICE" and "IT IS IMPERATIVE THAT YOUR PAYMENT IS RECEIVED IN THIS OFFICE AS SOON AS POSSIBLE." The letter goes on to describe the thirty-day period for disputing the debt.

## THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

■ The FDCPA prohibits a debt collector from using "false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e contains sixteen subsections which set forth a non-exhaustive list of practices that fall within this ban. The FDCPA also prohibits harassment, abuse and unfair or unconscionable means to collect any debt. 15 U.S.C. §§ 1692d, 1692f. In order to establish a violation of the FDCPA, a plaintiff must demonstrate three elements: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *Kolker v. Duke City Collection Agency*, 750 F.Supp. 468, 469 (D.N.M.1990). The first two elements are conceded by both defendants. Only the third element is at issue on this motion for partial summary judgment to establish liability on the FDCPA claims.

■ In analyzing whether statements in either the NTC1 or AZL1 letters are "false, deceptive or misleading," the Court must use an objective standard. The "least sophisticated consumer" standard maintains an element of reasonableness and has been the most often applied by appellate courts considering FDCPA claims. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993). However, the Seventh Circuit recently rejected the "least sophisticated consumer"

standard explaining that a reasonableness inquiry is at odds with the "least sophisticated consumer" who "is not merely below average he is the very last rung on the sophistication ladder" and would likely not be able to read a collection notice with care (or at all) let alone "interpret it in a reasonable fashion." *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994).

The Seventh Circuit adopted the "unsophisticated consumer standard," which it explained as the "hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." *Id.; see also Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 178 (W.D.N.Y.1988) (using "unsophisticated consumer" standard).

The only apparent difference between the two standards is the terminology. Both are grounded in consumer protection law and their underlying purpose is the same: to protect the consumer who is uninformed, naive, or trusting, with consideration given to an objective element of reasonableness which shields complying debt collectors from liability for unrealistic or peculiar interpretations of collections letters. *Id.; Clomon*, 988 F.2d at 1320.

## ANALYSIS

Plaintiff contends that Defendant TCA violated the FDCPA by sending him the AZL1 and NTC1 letters. He claims Defendant Rankin is also liable for any violations stemming from the AZL1 letter. Plaintiff contends that both letters (1) falsely threatened collection litigation; (2) failed to include a mandated disclosure provision; (3) represented a false sense of urgency; and (4) overshadowed the requisite thirty-day validation period, in violation of several provisions of the FDCPA.

In addition, Plaintiff maintains that the AZL1 letter (1) falsely represented that it came from an attorney and (2) falsely represented Defendant Rankin as the attorney for Bank One.

Finally, Plaintiff argues that in the NTC1 letter Defendant TCA (1) misrepresented that it could take action to collect the debt

because New Mexico statutes require that collection agencies be licensed prior to engaging in collection efforts within the state and (2) falsely claimed it had Plaintiff's "complete file."

These multiple alleged violations will each be addressed separately below.

*AZL1 & NTC1 Letters.*

**(1) Falsely threatening to sue.**

Plaintiff contends Defendants TCA and Rankin both violated 15 U.S.C. § 1692e(5) by falsely threatening to file collection litigation in the AZL1 letter. Plaintiff further contends that Defendant TCA again violated Section 1692e(5) in its NTC1 letter. Section 1692e(5) of the FDCPA proscribes any "threat to take any action that cannot legally be taken or that is not intended to be taken."

**a. AZL1 Letter.**

■ The AZL1 Letter, purportedly from attorney Rankin, clearly threatens litigation by its express language: "We have the legal right to file a lawsuit on the claim within the 30 day period ..." and "you should know that the lawsuit could result in your paying our costs of filing and service of process ..."

■ It is undisputed in the record that under its agreement with Bank One, TCA had to obtain written permission from Bank One prior to filing litigation against its debtors. When TCA obtained Bank One's permission to sue, it did so on a 65 percent contingency assignment in TCA's own name. New Mexico law prohibits a collection agency from filing suit in its own name on a contingency assignment, as such conduct constitutes the unauthorized practice of law. *See Kolker,* 750 F.Supp. at 472.

Therefore, Defendants could not legally have filed litigation according to TCA's agreement with Bank One against Plaintiff within the thirty-day time period indicated in the demand letter. Plaintiff is thus entitled to Summary Judgment on his claim that Defendants violated 15 U.S.C. § 1692e(5) by falsely threatening to file collection litigation in the AZL1 letter.

**b. NTC1 Letter.**

Plaintiff claims the NTC1 letter also falsely threatens to file collection litigation and, therefore, summary judgment should be granted against Defendant TCA who sent that letter. Plaintiff contends that the NTC1 letter threatens litigation by referencing the matter as "RE: BANK ONE, COLUMBUS, OHIO VS: CLEO H. RUSSEY" and including the following "litigation language" in the body of the letter: "THE ABOVE REFERENCED CREDITOR HAS FILED CLAIM AGAINST YOU WITH THIS OFFICE ..." and "WE ARE MAILING THIS NOTICE IN ADVANCE OF ANY ACTION BY OUR OFFICE."

This is a close call, but after reviewing the actual letter and those statements in context, the Court cannot determine as a matter of law that an uninformed, naive or trusting consumer would reasonably interpret that language, taken as a whole, as a threat of litigation.

■ As noted by Plaintiff in his reply brief, the crucial factor in this determination rested on the reference line in the NTC1 letter. The remaining statements in the letter, by themselves, cannot be interpreted, under the applicable least sophisticated consumer standard, as threatening a lawsuit as a matter of law.

■ Had the reference line appeared in the NTC1 letter as it appears above: "RE: BANK ONE, COLUMBUS, OHIO VS: CLEO H. RUSSEY," the least sophisticated consumer may well have reasonably understood that a lawsuit had been or was about to be filed against him. *See, e.g., Johnson v. Eaton,* 873 F.Supp. 1019, 1025–26 (M.D.La., 1995) ("Kornmeyer Furniture Co. vs. Ruth E. Johnson" located in top center of page conveyed threat of litigation). However, the actual format of the letter does not give the same impression, as evinced below:

RE: BANK ONE, COLUMBUS OHIO VS: CLEO H RUSSEY
PRINCIPLE BALANCE OWING: $1374.88
FILE #: 187353
 ACCT: 4168–593–082–234

As it appears above, the Court does not find the reference line to be a clear indication of legal action even to the least sophisticated consumer.

Plaintiff's reliance on *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2nd Cir.1989), is misplaced. In *Pipiles,* the Second Circuit found a collection agency unlawfully threatened a lawsuit in a "48 HOUR NOTICE" sent to the plaintiff. 886 F.2d at 23. The notice gave a clear indication that the collection agency was to take further action within forty-eight hours to secure full payment, stating:

> "Notice is Hereby Given That This Item Has Already Been Referred For Collection Action," "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full," and "Pay This Amount Now If Action Is To Be Stopped."

*Pipiles,* 886 F.2d at 24. The court found that the "clear import of the language, taken as a whole," was that legal action had been or was about to be taken. *Id.* at 25.

Here, the NTC1 letter does not so clearly imply that litigation has been or will be filed. It is far less threatening and includes the following statement offset and centered in the body of the letter: "FRANKLY WE WOULD LIKE TO KNOW IF YOU INTEND TO PAY THIS." which tends to soften any implied threats that may be perceived by even the least sophisticated consumer.

For these reasons, Plaintiff's motion for summary judgment on his claim that Defendant TCA's NTC1 letter violated 15 U.S.C. § 1692e(5) is denied.

## (2) Failing to include the mandated disclosure provision of Section 1692e(11).

██ 15 U.S.C. § 1692e(11) requires that "all communications made to collect a debt disclose clearly that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." Plaintiff is correct in his assertion that, as a matter of law, defendants violated

the FDCPA by the clear absence of the mandated disclosure on the letters sent to Plaintiff. *See Dutton v. Wolpoff and Abramson,* 5 F.3d 649, 653 (3rd Cir.1993) (Section 1692e(11) notice must appear on subsequent communications as well as primary communication).

██ The omission speaks for itself and does not require any analysis. TCA's arguments that the "technical" deficiency is not egregious and resulted in little or no harm misses the point, as does Defendant Rankin's assertion that the absence of the disclosure statement is "immaterial." The FDCPA imposes strict liability on the debt collector for violation of its terms. *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2nd Cir.1993). Defendants' arguments are better addressed to the issue of damages, not liability. *Id.; see* 15 U.S.C. § 1692k; *see also, Kuhn v. Account Control Technology,* 865 F.Supp. 1443, 1449 (D.Nev., 1994) (failure to include information required under § 1692g violates FDCPA regardless of whether debtor was actually misled).

Plaintiff is, therefore, granted summary judgment on his claim that Defendants TCA and Rankin violated Section 1692g by failing to include the mandatory disclosure provision on the AZL1 letter. Defendant TCA likewise violated Section 1692g by failing to include the disclosure provision on its NTC1 letter.

## (3) Misrepresenting urgency.

██ Relying on language in a Federal Trade Commission Official Staff Commentary, Plaintiff contends the letters sent by Defendants violated 15 U.S.C. § 1692e generally and 15 U.S.C. § 1692e(10) by conveying a "false sense of urgency." *See* 53 Fed. Reg. at 50106.[1]

The AZL1 Letter asks that payment or arrangements for payment be made in five days. The letter does not state when the five days commences or terminates. The NTC1 letter states in part: "IT IS IMPERATIVE THAT YOUR PAYMENT IS RE-

---

**1.** The regulation states: "A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message. It is a violation to send any communication that conveys to the consumer a false sense of urgency."

CEIVED IN THIS OFFICE AS SOON AS POSSIBLE"; however, no deadline is expressly given.

The Court is unable to conclude as a matter of law that the statements contained in the AZL1 letter and NTC1 letter would reasonably create a "false sense of urgency" in the unsophisticated consumer and, therefore, summary judgment is denied on this issue.

**(4) Overshadowing, contradicting, or evading the required validation notice.**

Plaintiff conclusively states that the AZL1 and NTC1 letters overshadow, contradict and evade the FDCPA's mandatory validation period. Section 1692g(a)(3)–(5) requires debt collectors to provide in their initial written communication with a consumer, or within five days thereafter, a validation notice which discloses to the consumer his/her right to dispute and/or validate the debt within thirty days of receipt of the notice.

Both the AZL1 and NTC1 letters contained the requisite validation notice. However, courts have found technical compliance with the mandated validation notice inadequate where such notice is overshadowed by other language in the letter. *See Cortright v. Thompson,* 812 F.Supp. 772 (N.D.Ill, 1992); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086 (W.D.N.Y., 1992).

 Overshadowing occurs when language of a demand letter stands in threatening contradiction to the statutorily required notice. *Anthes v. Transworld Sys., Inc.,* 765 F.Supp. 162 (D.Del.1991). Notices have been found invalid where they demand payment within a shorter limited time period than the thirty-day validation period on the basis that a reasonable least sophisticated consumer would overlook the validation period given the contradiction. *See Graziano v. Harrison,* 950 F.2d 107, 111 (3rd Cir.1991) (payment demanded within 10 days); *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225–26 (9th Cir.1988) (same).

**a. AZL1 Letter.**

 The AZL1 letter asks Plaintiff to pay the full outstanding amount due ($1602.70) *or* contact Attorney Rankin within

*five* days. The letter goes on to give the requisite validation notice, informing Plaintiff of his right to dispute the validity of the debt within thirty days, but then proceeds to nullify that message by stating "we have the legal right to file a lawsuit on the claim *within the 30 day period.*" (Emphasis added). The AZL1 letter thus sends a conflicting and threatening message that essentially nullifies the requisite validation notice in violation of the FDCPA. Given that language, the least sophisticated consumer could reasonably overlook the thirty-day period purportedly given to him to dispute the debt.

**b. NTC1 Letter.**

 As discussed in the preceding section, the NTC1 letter gave no deadline within which Plaintiff was to respond. The NTC1 letter included the required validation notice in its final paragraph. In the absence of any deadlines, the Court cannot find that Defendant TCA contradicted or invalidated the required validation notice in the NTC1 letter, and summary judgment is denied on that issue. *See Latimer v. Transworld Sys., Inc.,* 842 F.Supp. 274 (E.D.Mich.1993).

***AZL1 LETTER ONLY***

**(1) False representation that the letter was sent by an Attorney.**

Plaintiff contends the AZL1 letter falsely represented that it came from an attorney in violation of 15 U.S.C. §§ 1692e, 1692e(3), 1692e(9).

Section 1692e is the general prohibition of "false, deceptive or misleading representations or means in connection with the collection of any debt." Section 1692e(3) prohibits "the false representation … that any communication is from an attorney." Section 1692e(9) prohibits "any written communication … which creates a false impression as to its source."

**a. Defendant TCA.**

As pointed out by Plaintiff, Defendant TCA has admitted to sending a letter falsely purporting to have been sent by Attorney Rankin. Def.'s Answer; Statement of Undisputed Mat'l Facts Para. 27. Thus, sum-

mary judgment for violating Subsections 1692e(3) and 1692e(9) as well as the general prohibition of 1692e will be granted against TCA. In addition, as explained below, the Court finds summary judgment proper on this issue even without TCA's apparent admissions.

▪ Where debt collectors mass produce and mail form letters printed on an attorney's letterhead and cursorily signed by the attorney, courts find section 1692e(3) liability. *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F.Supp. 1495 (D.N.M.1994) (*citing Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1460–61 (C.D.Cal.1991); *Clomon*, 988 F.2d at 1316.)

In *Martinez*, a collection agency was held liable for violating the FDCPA by mailing a form letter on attorney letterhead, signed by the attorney, demanding payment on overdue accounts. 867 F.Supp. 1495. When the agency and the attorney were sued, the defendant attorney settled with the plaintiff out of court. The plaintiff was later granted partial summary judgment on her claims against the collection agency for falsely representing that the communication came from an attorney.

Then Chief Judge Juan Burciaga determined that, by mailing attorney form letters, debt collectors create a false or deceptive impression to the unsophisticated consumer that the creditor retained an attorney for the collection of the debtor's *particular* debts. *Id.* (Emphasis added). The Court concluded that such a letter implies that its source is the attorney, not the collection agency. *Id.*

▪ Defendant TCA, like the agency in *Martinez*, violated the FDCPA by creating a false and deceptive impression to the unsophisticated consumer that it had retained Rankin to collect Plaintiff's particular debt. Any reasonable consumer, albeit the least sophisticated one, would believe that the attorney had at least reviewed his/her file and not just had his name affixed to form correspondence. Therefore, an additional basis exists apart from Defendant TCA's own admissions to grant Plaintiff summary judgment on his claim that Defendant violated the FDCPA by sending him a letter falsely purporting to have been sent by attorney Rankin.

**b. Defendant Rankin.**

▪ In *Clomon*, the Second Circuit, under nearly identical facts, held an attorney liable for violating the FDCPA, explaining:

[T]he FDCPA sets boundaries within which debt collectors must operate. No mass mailing technique is permissible—regardless of how effective it might be—if that technique constitutes a false, deceptive, or misleading communication. As we have found here, the use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. . . . [and] implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

988 F.2d at 1321.

The attorney in *Clomon* was general counsel for the collection agency on a part-time basis. Here, Rankin contends that he was employed on a part-time basis with TCA, maintaining an office and small staff there, and being present a few days a month. Like the *Clomon* attorney, Rankin approved the form demand letters and the distribution procedures, but never personally mailed the letters. In addition, Rankin, like the *Clomon* attorney, never had any direct personal involvement in reviewing the individual plaintiffs' files or advising the creditor about how to address particular circumstances of each case, and he never received any instructions from the creditor about what steps to take against the debtors.

Defendant Rankin contends that he cannot be held liable for any FDCPA violations caused by the AZL1 letter because TCA personnel who sent that letter exceeded their authority under the terms of Rankin's contract with TCA.

Eleven states in 1991, including New Mexico, required collection agencies to be licensed pursuant to state law prior to engaging in collection efforts within their borders. For collection efforts in these states where TCA was not licensed, TCA personnel would send one of the form letters with a "Law Offices of Jon P. Rankin" letterhead. However, Defendant Rankin contends that the AZL1 letter sent to Russey was intended by him to be sent only to addresses in Arizona. Moreover, the purported signature on the AZL1 letter is not that of the stamp facsimile authorized by Rankin. It appears that someone from TCA simply signed the name of Jon Rankin in contradiction to the express limitations of the "Delegation of Authority" addendum. Defendant Rankin argues that for these reasons he is not liable for any FDCPA violations.[2]

The Court disagrees and grants Plaintiff summary judgment against Defendant Rankin for violating Sections 1692e, 1692e(3) and 1692e(9).

The AZL1 letter falsely represented its source as the "Law Office of Jon P. Rankin" and contained Rankin's purported signature, although Rankin had never personally reviewed Plaintiff's file. Rankin admittedly revised and approved the form collection letter used by TCA. Whether or not Defendant Rankin had actually authorized the mailing of this particular letter is immaterial for purposes of summary judgment on this issue. Rankin, violated the FDCPA when he authorized the sending of debt collection letters bearing his name and a facsimile of his signature without first reviewing the collection letters or the files of the persons to whom the letters were sent. *See Masuda,* 759 F.Supp. at 1460 (under the FDCPA, before

an attorney signs a dunning letter, the attorney must review the debtor's file and have some knowledge about the alleged debt).

The Court rejects Defendant Rankin's assertion that by maintaining an office at TCA, being physically present there two days a month and "supervising" a small staff, he took an active part in TCA's collection process. Defendant Rankin did not supervise, in the true sense of the word, the collection activity done in his name. This is demonstrated by the fact that the AZL1 letter was sent to New Mexico without his approval or knowledge.

As *Clomon* illustrates, Defendant Rankin's liability is centered on his lack of individual review and attention to particular files. He never considered the particular circumstances of a case prior to the form letters being mailed, contrary to the impression that a consumer, be he least sophisticated or not, would get when he receives a letter appearing to be from an attorney.

The fact that Defendant Rankin played virtually no day-to-day role in the debt collection process supports the conclusion that the collection letters were not "from" Rankin. *See Clomon,* 988 F.2d at 1321.

Therefore, the Court finds that both Defendants TCA and Rankin violated the FDCPA by falsely representing that the AZL1 letter was sent by a licensed attorney.

**(2) False representation that Defendant Rankin is the attorney for Bank One.**

▆▆▆▆ Plaintiff alleges that Defendants further violated the FDCPA by falsely representing in the AZL1 letter that Defendant Rankin was Bank One's attorney. The facts demonstrate that Rankin was the attorney for TCA and not Bank One. Further the contract between Bank One and Defendant TCA provides that "no account will be referred to an attorney without the express written permission of Bank One." Because no such permission was sought or obtained,

---

**2.** Defendant Rankin attempts to distinguish *Martinez* from this case. He is correct that, unlike him, the attorney in *Martinez* was paid a flat rate fee but that point is immaterial for purposes of this opinion. Regardless of the discrepancies in

the manner of compensation, Rankin, like the attorney in *Martinez,* had no personal, individualized involvement in the particular debtor's file that he was purportedly collecting.

the representation is false and defendants violated Sections 1692e and 1692e(10).

### *NTC1 LETTER ONLY.*

Finally, Plaintiff argues the NTC1 letter misrepresented that it could take action and falsely stated that TCA had possession of the debtor's complete file.

**(1) Misrepresenting that it could take action.**

■ New Mexico statutes require that collection agencies be licensed prior to engaging in collection efforts within the state. Plaintiff alleges that TCA violated various subsections of 15 U.S.C. § 1692e by attempting to collect a debt in New Mexico without a license.

Specifically, Plaintiff argues that TCA has violated Section 1692e's general prohibition of "false, deceptive or misleading" collection activity; Section 1692e(5)'s prohibition of a "threat to take any action that cannot legally be taken"; Section 1692e(10)'s prohibition of "the use of any false representation or deceptive means to collect or attempt to collect any debt"; and Section 1692f's prohibition of an "unfair or unconscionable" method of debt collection.

TCA has not disputed its unlicensed status. New Mexico law prohibits collection agencies, like Defendant TCA, from engaging in debt collection activities within the state without a license. N.M.S.A.1978 § 61–18A–5(A) (1987 Repl.Pamp.).[3] Moreover, this district has held that collection activity which violates state law violates the FDCPA. *See Kolker,* 750 F.Supp. at 472 (under New Mexico law, conduct constituted unauthorized practice of law in violation of FDCPA); *see also Gaetano v. Payco of Wisconsin, Inc.,* 774 F.Supp. 1404, 1415 (D.Conn.1990) (faced with a parallel Connecticut state statute, district court held that unlicensed collection activity within a state violated various provisions of the FDCPA); *Kuhn,* 865 F.Supp. 1443 (same). Therefore, this Court finds that Defendant TCA violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10) and 1692f by

engaging in collection activity in this state without a license, and Plaintiff will be granted Summary Judgment on these claims.

**(2) Misrepresenting that it had debtor's complete file.**

Plaintiff contends that Defendant TCA misrepresented that it had Plaintiff's "complete file" in violation of Section 1692e's general prohibition of false, deceptive or misleading communications. The NTC1 letter stated: "YOUR ACCOUNT AND COMPLETE FILE IS NOW IN THIS OFFICE." The Court finds there is an insufficient factual basis to support summary judgment on this issue precluding the Court from determining whether a material issue of fact is in dispute. Therefore, summary judgment is denied.

### UNFAIR TRADE PRACTICES ACT (UTPA)

In addition to seeking summary judgment on his FDCPA claims, Plaintiff moves the Court to grant him summary judgment on his claims under the New Mexico Unfair Practices Act (UPA), N.M.S.A.1978 §§ 57–12–1, et seq., (1987 Repl.Pamp.).

The UPA prohibits "unfair or deceptive trade practices and unconscionable trade practices." N.M.S.A.1978 § 57–12–3 (1987 Repl.Pamp.). An "unfair or deceptive trade practice" is defined in the statute as "a false or misleading oral or written statement ... knowingly made ... in the collection of debts by any person in the regular course of his trade or commerce which may, tends to, or does deceive or mislead any person ..." N.M.S.A.1978 § 57–12–2 D (1994 Cum. Supp.).

■ To establish that Defendants violated the UPA, the Plaintiff must prove the following: (1) Defendants made an oral or written statement that was false or misleading; (2) the false or misleading statement was "knowingly made in connection with the collection of a debt"; (3) the representation

---

**3.** Entitled the Collection Agency Regulatory Act, the statute sets conditions for receiving and maintaining a license and, among other things,

provides for approval of form notices and compliance with FDCPA standards. NMSA § 61–18A–1, et seq., 1978 (1987 Repl.Pamp.).

occurred in the regular course of the representor's trade or commerce; and (4) the representation "may, tends to, or does, deceive or mislead any person." *Ashlock v. Sunwest Bank of Roswell, N.A.,* 107 N.M. 100, 101, 753 P.2d 346, 347 (1988) *overruled on other grounds, Gonzales v. Surgidev Corp.,* 120 N.M. 133, 899 P.2d 576 (1995).

Given the corresponding provisions of the UPA and the FDCPA, all but the second of these elements has been established in my analysis of the FDCPA claims. Thus, the determinative issue on Plaintiff's UPA claim is whether the UPA's "knowing" requirement has been established as a matter of law.

 The alleged misrepresentation need not be intentionally made but it must be knowingly made. *Stevenson v. Louis Dreyfus Corp.,* 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991). The "knowingly made" requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading. *Id.*

### a. Defendant TCA.

Defendant TCA has not disputed that it knowingly sent the AZL1 and NTC1 letters to Plaintiff.[4] In those letters were representations which this Court has found to be deceptive. Whether or not TCA actually intended to deceive Plaintiff Russey need not be determined here as it is irrelevant to establishing liability.

### b. Defendant Rankin.

Defendant Rankin has also violated the Unfair Practices Act by enabling the AZL1 letter to be sent to Plaintiff. Despite his contentions that he did not know of or authorize the mailing of the AZL1 letter to Plaintiff, he nonetheless knowingly effectuated the communication by the practice and procedure of collection he employed in his dealings with and on behalf of TCA.

Defendant Rankin revised and approved the debt collection letter which was sent to

Plaintiff bearing his name and a facsimile of his signature. Defendant enabled the letter to be sent without his knowledge by the very procedures he approved. The Court has found the AZL1 letter violated several provisions of the FDCPA because it contained false and deceptive communications.

As illustrated by *Stevenson,* one does not have to intend to deceive to be liable under the UPA. Defendant Rankin was actually aware or in the exercise of reasonable diligence should have been aware that the statements in the AZL1 letter were false and misleading. Thus, Summary Judgment is also granted against Defendant Rankin for violating the UPA.

Whether or not Defendants' violations of the UPA were willful, warranting treble damages pursuant to N.M.S.A.1978 § 57–12–10 (1987 Repl.Pamp.), remains to be determined.

An order in accordance with this opinion shall be entered.

---

**4.** Defendant TCA did not respond in any manner to the Plaintiff's Motion for Summary Judgment on this issue.